UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ROBERT J. MORGANTI, JR., | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | Civil Action No. 14-cv-11868-IT |
| | * | |
| KELLY RYAN, | * | |
| | * | |
| Respondent. | * | |

MEMORANDUM & ORDER

October 6, 2016

TALWANI, D.J.

I.    Introduction

Petitioner Robert J. Morganti, Jr. has filed a Petition for Writ of Habeas Corpus [#1].
Petitioner contends that his conviction and incarceration for murder violate federal law because
(1) he was denied his right to a public trial under the Sixth Amendment when his trial counsel
decided not to object to the closure of the courtroom for two days during jury voir dire
proceedings without Petitioner's knowing assent, (2) he was denied his right to effective
assistance of counsel when his trial counsel did not object to the courtroom closure, and (3) he
was not allowed to attend a jury view. For the following reasons, the petition is DENIED.

II.    Procedural Background

On May 29, 1998, Petitioner was indicted by a Plymouth County grand jury for the
murder in the first degree of Anthony LoConte. Supp. Answer ("S.A.") Vol. I. 4 [#13]. A jury
trial commenced on June 3, 2003 (Giles, J., presiding), and, on June 13, 2003, the jury found
Petitioner guilty of first-degree murder by deliberate premeditation and by extreme atrocity and
cruelty. S.A. Vol. I 6-7.

On direct appeal to the Massachusetts Supreme Judicial Court ("SJC"), Petitioner raised the following claims: 1) the trial court should have suppressed his statements to police; 2) the trial court improperly excluded Petitioner from the jury view; 3) the prosecutor's closing argument was improper; 4) the trial court improperly prevented a witness from consulting with his counsel regarding his Fifth Amendment right against self-incrimination, rendering his testimony unreliable; 5) the jury should have been instructed that their verdict must be unanimous as to the factors under Commonwealth v. Cunneen, 449 N.E.2d 658, 665 (Mass. 1983); and 6) the conviction should be vacated under G.L. c. 278, § 33E.3 (providing for vacating a verdict if the verdict is against the weight of the evidence, because of newly discovered evidence, or if justice so requires). S.A. Vol. I 17-78. The SJC affirmed Petitioner's conviction on November 25, 2009. Commonwealth v. Morganti, 917 N.E.2d 191 (Mass. 2009); S.A. Vol. I 159-171.

On November 19, 2010, Petitioner filed a motion for new trial alleging a violation of the right to a public trial. S.A. Vol. I 8, 304-392. Following an evidentiary hearing, Judge Giles denied the motion on December 15, 2011. S.A. Vol. I 9, 281-289.[1] The SJC allowed Petitioner's application for leave to appeal on August 8, 2012. S.A. Vol. I 591-593. The SJC affirmed the denial of Petitioner's motion for new trial on February 12, 2014. Commonwealth v. Morganti, 4 N.E.3d 241 (Mass. 2014); S.A. Vol. I 765-771. The SJC found that Petitioner "waived his right to a public trial where his experienced trial counsel was aware of the [courtroom] closure and did not object." Id. at 243; S.A. Vol. I 767. The SJC further found that

---

[1] The trial judge found that Petitioner did not knowingly waive his right to a public trial because his attorney had not advised him of that right; but, the judge ruled that Petitioner's right to a public trial was not violated because the courtroom closure was de minimis. Commonwealth v. Morganti, 4 N.E.3d 241, 245 (Mass. 2014); S.A. Vol. I 768.

counsel's failure to raise such an objection did not constitute ineffective assistance of counsel.

Id. Petitioner filed the instant Petition for Writ of Habeas Corpus [#1] on April 16, 2014.

III.    Factual Background

The facts are described as they were found by the SJC. The court must accept the state court findings of fact unless Petitioner demonstrates "by clear and convincing evidence" that "they are in error." McCambridge v. Hall, 303 F.3d 24, 26 (1st Cir. 2002) (en banc) (citing 28 U.S.C. § 2254(e)(1)); see also Lynch v. Ficco, 438 F.3d 35, 39 (1st Cir. 2006); Smiley v. Maloney, 422 F.3d 17, 19 n. 1 (1st Cir. 2005).

The SJC found the following facts related to the public trial and ineffective assistance of counsel claims:

> During jury empanelment, the court officers closed the court room to all members of the public, as was the custom and practice at the time in that court. Among those excluded were Beverly Cocomile, Theresa Andrade, and Richard Cocomile, the defendant's mother, sister, and stepfather, respectively. The defendant did not object to the courtroom closure . . . .
>
> After an evidentiary hearing, the motion judge, who was also the trial judge, found that the court room had been closed for the seventy-nine minutes that it took to empanel the jury . . . .
>
> Pursuant to the defendant's motion for new trial, the trial judge held an extensive evidentiary hearing in order to determine whether the court room was closed during the jury empanelment in this case . . . .
>
> The defendant first presented testimony from Beverly, Andrade, and Richard. All three testified that they were present in the court room on the morning of June 3, 2003, while the judge acted on the parties' motions in limine. Unbeknownst to the judge, at 11:02 A.M., before the jury venire was brought into the court room, the three were asked by the court officers to leave the court room during the empanelment process.
>
> With the court room cleared, the prospective jurors were brought in, where, ordinarily, they took up all the available seats. The process of jury empanelment continued by way of individual jury questioning at sidebar. Sixteen jurors were empanelled and the court room was reopened seventy-nine minutes after it was closed.

Attorney **Kevin Reddington**, the defendant's trial counsel, testified that he was aware that Beverly and Andrade were not present in the court room during the jury empanelment process, despite the fact that they had been present for every court hearing up until that point.[2] He attributed their absence to the long-standing practice in Brockton Superior Court of closing the court room during jury empanelment.

**Reddington,** an established and respected trial attorney, went on to testify that he was aware of this practice, as, at the time of trial, he had seen it repeatedly during his twenty-eight years of practicing criminal law in the Brockton Superior Court.[3] According to **Reddington**, "[t]he practice, custom and procedure on a routine basis was that when jurors were brought into the court room, due to the size and configuration of the court room, anyone that was not directly connected with the case, in other words, the defendant, obviously, and trial counsel for the government or for the defense, were told to leave and stand in the hallway during the jury selection process. Once the jurors were selected, the individuals were, of course, invited back in."

Although **Reddington** was aware of this practice, he had not objected to it at any point during his years of trying cases in the Brockton Superior Court.[4] While he was similarly aware of his clients' **Sixth Amendment** right to a public trial, he had never considered that the right might extend to jury empanelment. He understood that the court room was small, and that all of the seating was taken by the jury venire. Although he testified that he had no tactical reasons not to object, he explained that in acquiescing to closing the court room during jury empanelment,

---

[2] The SJC inserted the following footnote:

> Attorney Kevin Reddington testified that he occasionally told family members and spectators that they would have to vacate the court room during jury selection. He was unable to recall if he did so in this case.

[3] The SJC inserted the following footnote:

> Reddington was admitted to the Massachusetts bar in 1975, and began practicing criminal law in the Brockton Superior Court immediately thereafter.

[4] The SJC inserted the following footnote:

> After the decision by the United States Court of Appeals for the First Circuit in *Owens v. United States*, 483 F.3d 48 (1st Cir. 2007), holding that the right to a public trial extends to jury empanelment, Reddington began a practice of objecting if the courtroom was closed during empanelment. He noted, however, that after this court's decision in *Commonwealth v. Cohen (No. 1)*, 456 Mass. 94, 106, 921 N.E.2d 906 (2010), the practice in the Brockton Superior Court changed and court rooms were held open during jury selection.

"we all, in our efforts to have an orderly empanelment process, and due again to the small configuration of the courtrooms, just went with the flow."

The defendant also offered testimony from two other experienced criminal defense attorneys who practiced extensively in the Brockton Superior Court but had never objected to the closures: Attorney John Darrell and Attorney Joseph Krowski. Darrell, the attorney in charge of the Plymouth County office of the Committee for Public Counsel Services (CPCS) during the time in question, testified that the closure of the court room during empanelment was a "culture,"[5] and that he and other defense attorneys were a part of the "culture." He routinely told family members of his clients that they could not stay in the court room during empanelment, never objected to their exclusion in any trial, and made no effort to change the practice.

Krowski agreed that there was an established practice of closures during jury empanelment at the Brockton Superior Court throughout his extensive legal career.[6] He reiterated that the closures were due to the small size of the court room, and the need to fill all available seats with prospective jurors. While he was fully aware of the Sixth Amendment right to a public trial, he too testified that he was not aware that the right extended to jury empanelment until 2007, when he spoke with counsel from the *Cohen* trial, at which objections to court room closure during jury empanelment were raised. See *Cohen (No. 1)*, 456 Mass at 118, 921 N.E.2d 906. Krowski testified that he had never objected to the closure of the court room in the Brockton Superior Court prior to 2007, and stated, "I just thought that [closure during empanelment] was protocol. I had seen it for so many years, exclusion of the public from jury selection, that it just didn't occur to me that it presented a problem."

[The trial judge] noted that the court room was closed for only seventy-nine minutes of a ten-day trial, that the voir dire activity at sidebar would have been inaudible to spectators, and that the defendant's lack of objection suggested that he deemed

---

[5] The SJC inserted the following footnote:

> Attorney John Darrell was admitted to the Massachusetts bar in 1981, and practiced criminal law in the Brockton Superior Court until his retirement in 2009. He worked as a trial attorney for the Committee for Public Counsel Services (CPCS) before becoming attorney in charge of the Plymouth County CPCS office.

[6] The SJC inserted the following footnote:

> Attorney Joseph Krowski was admitted to the Massachusetts bar in 1977. He is a self-employed attorney who has tried, by his own account, "a couple hundred" criminal cases in the Brockton Superior Court.

the proceedings to be inconsequential.

Morganti, 4 N.E.3d at 242-245; S.A. Vol. I 767-768.

IV.     Standard of Review

The court's review of the habeas petition is governed by the Antiterrorism and Effective

Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, if a state court has adjudicated a claim

on the merits, the federal habeas court must defer to that adjudication unless it (1) "resulted in a

decision contrary to, or involved an unreasonable application of, clearly established Federal law,

as determined by the Supreme Court of the United States," or (2) "resulted in a decision that was

based on an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding." 28 U.S.C. § 2254(d). A federal court must review de novo any federal

claim not reviewed by the state court on the merits. See Clements v. Clarke, 592 F.3d 45, 52 (1st

Cir. 2010).

A state court decision is "contrary to" clearly established Federal law if the court applies

"a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case

differently than [the Supreme Court] ha[s] done on a set of materially indistinguishable facts."

Bell v. Cone, 535 U.S. 685, 694 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406

(2000); Sleeper v. Spencer, 510 F.3d 32, 37-38 (1st Cir. 2007)). A state court decision involves

an "unreasonable application" of clearly established Federal law "when the state court correctly

identifies the correct legal principle, 'but (i) applies those principles to the facts of the case in an

objectively unreasonable manner; (ii) unreasonably extends clearly established legal principles to

a new context where they should not apply; or (iii) unreasonably refuses to extend clearly

established legal principles to a new context where they should apply.'" Malone v. Clarke, 536

F.3d 54, 63 (1st Cir. 2008) (quoting Sleeper, 510 F.3d at 38). "[E]valuating whether a rule

6

application was unreasonable requires considering the rule's specificity. The more general the

rule, the more leeway courts have in reaching outcomes in case-by-case determinations."

Harrington, 562 U.S. at 101 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Under

both the "contrary to" and "unreasonable application" prongs, "clearly established Federal law"

refers only to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the

time of the relevant state court decision." Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing

Williams, 529 U.S. at 412). If Supreme Court cases "give no clear answer to the question

presented," a state court's resolution of a constitutional question may not serve as a basis for

habeas relief. Wright v. Van Patten, 552 U.S. 120, 126 (2008) (per curiam); see also Carey, 549

U.S. at 77 (a lack of holdings from the Supreme Court regarding a topic bars a finding that a

state court "unreasonably appli[ed] clearly established Federal Law.").

     If a state court applied a standard that was contrary to or an unreasonable application of

clearly established federal law, the federal court must conduct a de novo review of the claim. See

Aspen v. Bissonnette, 480 F.3d 571, 576 (1st Cir. 2007). Under that review, the petitioner must

demonstrate that he "is in custody in violation of the Constitution or laws or treaties of the

United States." Id. at 576 (quoting 28 U.S.C. § 2254). In other words, "a petitioner must show

that his underlying detention is unlawful and not just that the state court employed faulty

reasoning in his case." Id. (citing Bronshtein v. Horn, 404 F.3d 700, 724 (3d Cir. 2005)).

V.    Discussion

     *a.  Right to a Public Trial*

     Petitioner first asserts that he was deprived of his right to a public trial because the

public, including Petitioner's family, was excluded from jury selection. Specifically, Petitioner

objects to the state court's determination that he had waived the right to a public trial even

though only trial counsel, and not Petitioner himself, made the waiver.[7]

The Supreme Court cases Petitioner cites—Waller v. Georgia and Presley v. Georgia—

do not clearly establish that counsel cannot waive a defendant's Sixth Amendment right to a

public trial.

In Waller, the Supreme Court held that the right to a public trial is guaranteed by the

Sixth Amendment and exceptional circumstances must exist for the *court* to *order* closure.

Waller v. Georgia, 467 U.S. 39, 47 (1984). In Presley, decided 25 years later, the Supreme Court

held that the right to public trial, protected under Sixth Amendment and confirmed by the

Supreme Court in Waller, extends to jury voir dire proceedings. Presley v. Georgia, 558 U.S.

209, 212-13 (2010).

Although these cases, read together, *could* allow a court to determine that waiving the

---

[7] Respondent asserts that, by determining that Petitioner waived his public-trial rights, the SJC rested its decision in this case on an independent and adequate state ground and, as a result, that Petitioner has procedurally defaulted on his claim. Petitioner may not obtain habeas review when an independent and adequate state ground exists to support the state court decision. Coleman v. Thompson, 501 U.S. 722, 750 (1991). "For a state procedural rule to be 'independent,' the state law ground for decision must not be 'interwoven with the federal law.'" Park v. California, 202 F.3d 1146, 1152 (9th Cir. 2000) (quoting Michigan v. Long 463 U.S. 1032, 1040-41 (1983)); accord Brecheen v. Reynolds, 41 F.3d 1343, 1353 (10th Cir. 1994); see also Lee v. Corsini, 777 F.3d 46, 54-55 (1st Cir. 2015) ("If the state court's decision . . . rests on some other, nonprocedural ground, federal merits review will be available only if that ground is federal in nature[] or 'interwoven' with federal law." (quoting Brewer v. Marshall, 119 F.3d 993, 999 (1st Cir. 1997)). Since, in this case, the SJC relied in part on federal case law and its own Sixth Amendment jurisprudence in concluding that Petitioner had waived his right to a public trial, see Morganti, 4 N.E.3d at 246; S.A. Vol. I 769 (citing Waller and Presley), the SJC's adjudication of Petitioner's public-trial claim did not rest on an independent state ground. Further, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, 562 U.S. 86, 99 (2011). Accordingly, Petitioner has not procedurally defaulted on his claim, and the court can decide the claim on the merits.

right to a public trial requires the defendant's personal assent, they do not "clearly establish" that personal waiver is required.

Waller and Presley merely establish the importance of the right to a public trial, including during the jury voir dire phase. However, in both cases, the defendants' trial counsel objected to the courtroom closures and thus the courts did not address whether the defendants assented to any waiver by counsel nor whether such assent was necessary. See Presley, 558 U.S. at 210; Waller, 467 U.S. at 41-42. Although the cases establish the "fundamental" nature of the right, the discussion is directed at what is required for judges to deny the right over objection. Here, counsel did not object, and no later Supreme Court case holds that the right to a public trial can only be waived by counsel with the defendant's knowing assent.

In further evidence that Supreme Court law is not "clearly established" on this issue, at least two Courts of Appeal have allowed counsel to waive their clients' public trial rights without knowing assent. Compare Guyton v. Butler, 490 F. App'x 331, 333 (11th Cir. 2012) (table) ("The Supreme Court has not held that counsel cannot waive his client's right to a public trial. . . . [T]here is no clearly established federal law stating that counsel cannot waive the right to a public trial as a strategy decision without his client's consent.") and Daughtry v. Grenier, No. 01-2466, 2002 WL 31819589, at *1 (2d Cir. Dec. 16, 2002) (table) ("[T]here is no clearly established binding precedent as to either whether personal waiver of the right to a public trial is constitutionally required, or as to whether waiver by counsel requires consultation with a client."), with Walton v. Briley, 361 F.3d 431, 434 (7th Cir. 2004) ("The record does not indicate that Walton intelligently and voluntarily relinquished a known right. Therefore, we hold that Walton's right to a public trial was not waived by failing to object at trial."). Although none of these decisions are binding on this court, they do demonstrate a circuit split on the issue, rather

than clearly established Supreme Court law on whether the right to a public trial is waivable by trial counsel without the knowing assent of the defendant.

Furthermore, the SJC's holding that Petitioner's counsel could waive the public trial right without Petitioner's knowing assent is not inconsistent with general waiver principles. See Gonzalez, 553 U.S. at 249-50 (acknowledging that the attorney must have control over certain trial matters). Specifically, the SJC held that because the right to a public trial is a "tactical decision," it is waivable by counsel. Morganti, 4 N.E.3d at 246; S.A. Vol. I 769. Several First Circuit cases have likewise held that the right is waivable by counsel. See United States v. Quiles-Olivo, 684 F.3d 177, 186 (1st Cir. 2012) (defense counsel's request, granted by the trial court, that the defendant's mother be allowed into the courtroom waived any further exclusion claim); United States v. Christi, 682 F.3d 138, 142-43 (1st Cir. 2012) (trial counsel did not object to closing the courtroom at sidebar without defendant and defendant was deemed to have waived his public trial right); Bucci v. United States, 662 F.3d 18, 31-32 (1st Cir. 2011) (accepting defense counsel's tactical reasons for failing to object to a partial courtroom closure during jury voir dire as "reasonable").[8]

Without "clearly established" federal law, the SJC's decision was neither "contrary to" nor an "unreasonable application" of federal law. The SJC did not articulate "a rule different from the governing law" nor "decide[] a case differently than [the Supreme Court] ha[s] done on a set of materially indistinguishable facts." Bell, 535 U.S. at 694 (citing Williams, 529 U.S. at

---

[8] Petitioner's citation to United States v. Negron-Sostre is unavailing. 790 F.3d 295 (1st Cir. 2015). There, the First Circuit reversed convictions based on closure of the courtroom during jury selection even though the defense attorneys failed to object to the closure. Id. at 306. This case, however, sets forth the rule in the First Circuit on direct appeal, but does not show that Supreme Court law is clearly established that counsel cannot waive their client's public trial rights for purposes of habeas review.

405-406; Sleeper, 510 F.3d at 37-38). Waller and Presley did not create a "governing law" requiring a defendant's knowing assent to his or her trial counsel's waiver of his or her right to a public trial, nor has the Supreme Court decided a case of "materially indistinguishable facts" to Petitioner's. Those cases established the importance of the right to a public trial and acknowledged that some rights require a defendant's knowing assent in order to be waived by counsel, but they did not establish that the right to a public trial requires the defendant's knowing assent to be waived by counsel.[9]

The SJC's opinion was also not an "unreasonable application" of "clearly established federal law" because the SJC did not (i) apply federal law principles to the facts of Petitioner's case in an objectively unreasonable manner; (ii) unreasonably extend clearly established federal legal principles to Petitioner's case where they should not apply; nor (iii) unreasonably refuse to extend clearly established legal principles to Petitioner's case where they should apply. See Malone, 536 F.3d at 63. It is not unreasonable for the SJC to consider the waiver of the right to a public trial as a "tactical" decision within trial counsel's purview and therefore waivable without the defendant's knowing assent. Because the SJC's opinion is not "contrary to" or an "unreasonable application" of "clearly established" federal law, as determined by the Supreme Court, the first basis of Petitioner's petition is denied.

   b.  *Ineffective Assistance of Counsel*

The Supreme Court has "clearly established" the law for ineffective assistance of counsel claims. A petitioner must establish: (1) that his or her trial counsel's performance was deficient; and (2) that his or her trial counsel's deficient performance prejudiced him. Strickland v.

---

[9] Petitioner's argument that there was no knowing waiver because *counsel* was not aware of Petitioner's public trial right is more properly addressed as to ineffective assistance of counsel.

_Washington_, 466 U.S. 668, 687 (1984); <u>see also</u> <u>Williams</u>, 529 U.S. at 390-91 ("It is past question that the rule set forth in <u>Strickland</u> qualifies as 'clearly established Federal law, as determined by the Supreme Court of the United States.'"). However, because the right to a public trial is a structural right, the petitioner does not have to meet the second part of the test. <u>See</u> <u>United States v. Owens</u>, 483 F.3d 48, 64-64 (1st Cir. 2007).

The analysis thus turns on whether the SJC "unreasonably applied" <u>Strickland</u>[10] to Petitioner's claims; specifically, whether Petitioner's trial counsel's performance was objectively "deficient," despite the SJC's conclusion that it was not. "Judicial scrutiny of counsel's performance must be highly deferential." <u>Strickland</u>, 466 U.S. at 689. To succeed on an ineffective assistance of counsel claim, the petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" <u>Id.</u> (quoting <u>Michel v. Louisiana</u>, 350 U.S. 91, 101 (1955)).

Petitioner argues that counsel conceded that he neither knew the right to public trial applied to jury selection, nor did he have any strategic reason to forego objection to the complete closure of the room. Despite this "concession," the SJC summarized the sound and strategic reasons that counsel did not object to the closure of the courtroom:

> The reasons for the acquiescence of counsel were also apparent. Reddington testified, as an explanation for his policy against objecting, that he shared the desire to have an orderly empanelment process. It was apparent that he was more focused on selecting a jury, usually by means of individual juror questions at sidebar, rather than keeping an eye on what might be going on in a court room overcrowded with prospective jurors and a client's friends and family. Simply put, Reddington is a highly capable defense attorney who did not view the closure of the court room as inconsistent with the goal of selecting a fair and impartial jury for his clients.

---

[10] The SJC applied <u>Commonwealth v. Saferian</u>, 315 N.E.2d 878 (Mass. 1974), the state equivalent of <u>Strickland</u> in Massachusetts. <u>See</u> <u>Lee v. Corsini</u>, 777 F.3d 46, 57 (1st Cir. 2015) ("[T]he state standard under <u>Commonwealth v. Saferian</u> . . . is the 'functional equivalent' of the federal standard of <u>Strickland v. Washington</u>.").

Morganti, 4 N.E.3d at 248; S.A. Vol. I 770.

Based on counsel's testimony about his reasons for not objecting to the courtroom

closure, the SJC was not unreasonable in determining that counsel's performance was not

deficient under the first prong of Strickland.

Petitioner points to Bucci v. United States, 662 F.3d at 31, a First Circuit case on direct

appeal which held that a court could assume that a counsel's failure to object to a complete

courtroom closure during jury voir dire was an unsound trial strategy, and Owens v. United

States, 517 F. Supp. 2d 570, 577 (D. Mass. 2007), a District Court case which held that counsel's

failure to object to a complete courtroom closure during voir dire because of lack of knowledge

of applicable law amounted to ineffective assistance of counsel. As lower court decisions,

however, Bucci and Owens do not suggest the SJC misapplied Supreme Court precedent, much

less in an unreasonable way.[11]

    *c. Jury View*

Petitioner finally argues that the SJC's decision that Petitioner's exclusion from the jury

view over counsel's objection did not violate Petitioner's due process rights was contrary to

clearly established federal law and an unreasonable determination of the facts.

The SJC found the following facts related to the jury view:

> [T]he Commonwealth sought a pretrial ruling as to whether the jury could view a
> Monte Carlo automobile that was the same model, make, and year as the one in
> which the victim was killed, with a mannequin seated in the front passenger seat
> which had a yellow rod through the mannequin's head to mark the path of travel of
> the bullet that killed the victim . . . .
>
> The judge allowed the Commonwealth's motion after obtaining the
> Commonwealth's representation that no testimony would be taken during the view.
> The view was conducted prior to opening statements, after the jury were instructed
> by the judge that the purpose of the view was to help them understand the evidence

---

[11] Notably, both cases dealt with direct appeals instead of the stricter standard for habeas review.

at trial. Each attorney was permitted at the view to draw the jury's attention to aspects of the view, but no evidence was taken and no demonstration performed.

The judge ruled that the defendant had no right to be present for the view and would not be permitted to attend. The defendant timely objected. In making her ruling, the judge found that the defendant posed a risk of flight, as he had been a fugitive from the pending charges for twelve years; the judge stated that she was "very concerned about security issues." She offered to allow the defendant to observe the view from a court house window, as the Monte Carlo was in the parking lot within sight of the court house, but the defendant declined her offer. She also offered the defendant the opportunity to conduct his own private viewing before the jury view in the presence of the judge, counsel, and the court reporter, but the defendant declined this offer as well. The defendant reviewed photographs of the view, however, including at least one photograph of the vehicle with the mannequin placed within and the rod protruding through its head, which was admitted in evidence at trial.

Morganti, 917 N.E.2d at 203-04; S.A. Vol. I 167-68.

The SJC held that Petitioner did not have a right to be present at the jury view. Id. at 204. The court noted that, although the view "was not a typical view," it "was still a view for all intents and purposes, in that no testimony was taken or demonstration performed, and the jury were instructed that the purpose of the view was to assist them in understanding the evidence at trial." Id. And, given the trial judge's finding regarding the security risk posed by Petitioner's presence at the jury view, coupled with the trial judge's willingness to make alternative arrangements to accommodate the defendant, the SJC found that the trial judge's decision not to permit Petitioner to be present at the jury view was reasonable. Id.

Both Petitioner and Respondent agree that the governing federal law is Snyder v. Massachusetts, 291 U.S. 97, 107-108 (1934), overruled in part on other grounds, Malloy v. Hogan, 378 U.S. 1 (1964). In Snyder, the Court held that defendants do not have an absolute right to be present at a jury view, but only to the extent that their presence "is a condition of due process to the extent that a fair and just hearing would be thwarted by" their absence. Id.

Petitioner argues that the jury view was not an ordinary view; and instead, the view was

14

used as a crime scene reconstruction, and the prosecutor "gave directives to the jury that they observe certain distances, parts of the car, and views of the interior of the car, all of which could not possibly be seen or heard by [Petitioner] if he were viewing [the jury view] from a courthouse window." Pet'r's R. 4 Mem. Supp. Pet. 17 [#3].

That argument is not persuasive. Neither the prosecutor nor the defense presented any evidence at the jury view, and, even though the prosecutor pointed out aspects of the car and the scene for the jury to consider, the jury was instructed that the purpose of the view was only to assist them in understanding the evidence presented at trial. Cf. Snyder, 291 U.S. at 102-03, 110 (no violation of due process where counsel, but not defendants, were allowed to be present at jury view of crime scene recreation, even where prosecutor and defense attorneys pointed "out particular features of the scene and request[ed] the jury to observe them"). Accordingly, the SJC's ruling that Petitioner's absence from this jury view did not violate Due Process was not contrary to clearly established federal law (especially in light of the alternatives that the trial judge offered to the Petitioner).[12]

VI.   Conclusion

For the reasons stated above, the Petition for Writ of Habeas Corpus [#1] is DENIED.

IT IS SO ORDERED.

October 6, 2016                                     /s/ Indira Talwani
                                                    United States District Judge

---

[12] The SJC similarly did not determine unreasonably that Petitioner was a security risk. Petitioner argues that he did not misbehave during the trial such that the trial judge should have any security concerns, and that there was no added security risk in Petitioner being in the parking lot when he was routinely transported through that parking lot every day for trial. Petitioner does not dispute, however, that he was a fugitive from the charges for which he was convicted for twelve years. In any event, even if the trial judge were wrong as to the security risk, Petitioner's absence from the jury view did not thwart a "fair and just hearing." Snyder, 291 U.S. at 108.

15